UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
H.B. individually by his mother and natural guardian
JENNETTE LOTREAN, and JENNETTE LOTREAN, Case No.: 24-cv-7067
Plaintiffs,

-against-

THE COUNTY OF SUFFOLK, SUFFOLK COUNTY SOCIAL SERVICES COMMISSIONER FRANCES PIERRE, CPS SENIOR CASEWORKER LESLIE KRIEGER, Individually and in her Official Capacity, CASEWORKER IDA SANTOS, Individually and in her Official Capacity, CASEWORKER ASHLEY LAWRENCE, Individually and in her Official Capacity, CASEWORKER ASHLEY BURKE, Individually and in her Official Capacity, SENIOR CASEWORKER HEIDI LOBIANCO Individually and in her Official Capacity, CPS SUPERVISOR/BUREAU CHIEF DENNIS NOWAK, Individually and in his Official Capacity, CPS SUPERVISOR/BUREAU CHIEF TRACI BARNES, Individually and in her Official Capacity, SUFFOLK COUNTY DETECTIVE "JOHN" BARRIOS SPECIAL VICTIMS UNIT Individually and in his Official Capacity, THE COUNTY OF NASSAU, NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES, NANCY NUNZIATA COMMISSIONER, Individually and in her Official Capacity, MARY NEALY SUPERVISOR NASSAU COUNTY ATTORNEY'S OFFICE Individually and in her Official Capacity, TRACY AULL CPS AGENT Individually and in her Official Capacity,

Defendants.
------------------------------------------------------------------------X

Plaintiff, JENNETTE LOTREAN, by and through her attorneys, Law Offices of Peter Sverd PLLC, alleges the following against the Defendants:

**PARTIES**

1. Plaintiff, JENNETTE LOTREAN is a natural person residing in the Town of Babylon, County of Suffolk, State of New York.

2. HB is a minor child who at all relevant times us under the age of five (5) and resides with his mother and natural guardian JENNETTE LOTREAN.

3. At all times hereinafter mentioned, Defendant THE COUNTY OF SUFFOLK is municipal corporation with a principal place of business at 3455 Veterans Memorial Highway, Ronkonkoma, New York (hereinafter referred to "Suffolk County", "County of Suffolk", or "The County of Suffolk."

4. At all times hereinafter mentioned, Defendant, FRANCES PIERRE, was the Commissioner of Social Services, 3455 Veterans Memorial Highway, Ronkonkoma, New York, and was acting in the course of her employment with defendant THE COUNTY OF SUFFOLK, and in furtherance of the business of the defendant THE COUNTY OF SUFFOLK.

5. At all times hereinafter mentioned, Defendant, CPS SENIOR CASEWORKER LESLIE KRIEGER, was a high-level supervisor with the Child Protective Services Investigations Bureau, 3455 Veterans Memorial Highway, Ronkonkoma, New York, and was acting in the course of his employment with defendant THE COUNTY OF SUFFOLK, and in furtherance of the business of the defendant THE COUNTY OF SUFFOLK.

6. At all times hereinafter mentioned, Defendant, CASEWORKER IDA SANTOS, was a caseworker at Child Protective Services Investigations Bureau, 3455 Veterans Memorial Highway, Ronkonkoma, New York, and was acting in the course of his employment with defendant THE COUNTY OF SUFFOLK, and in furtherance of the business of the defendant THE COUNTY OF SUFFOLK.

7. At all times hereinafter mentioned, Defendant, CASEWORKER ASHLEY LAWRENCE, was a caseworker at Child Protective Services Investigations Bureau, 3455 Veterans Memorial Highway, Ronkonkoma, New York, and was acting in the course of his employment with defendant THE COUNTY OF SUFFOLK, and in furtherance of the business of the defendant THE COUNTY OF SUFFOLK.

8. At all times hereinafter mentioned, Defendant, CASEWORKER ASHLEY BURKE, was a caseworker at Child Protective Services Investigations Bureau, 3455 Veterans Memorial Highway, Ronkonkoma, New York, and was acting in the course of his employment with defendant THE COUNTY OF SUFFOLK, and in furtherance of the business of the defendant

THE COUNTY OF SUFFOLK.

9. At all times hereinafter mentioned, Defendant, SENIOR CASEWORKER HEIDI LOBIANCO was a senior caseworker at Child Protective Services Investigations Bureau, 3455 Veterans Memorial Highway, Ronkonkoma, New York, and was acting in the course of his employment with defendant THE COUNTY OF SUFFOLK, and in furtherance of the business of the defendant THE COUNTY OF SUFFOLK.

10. At all times hereinafter mentioned, Defendant CPS SUPERVISOR/BUREAU CHIEF DENNIS NOWAK, was a senior supervisor and Bureau Chief of Child Protective Services Investigations Bureau, 3455 Veterans Memorial Highway, Ronkonkoma, New York, and was acting in the course of his employment with defendant THE COUNTY OF SUFFOLK, and in furtherance of the business of the defendant THE COUNTY OF SUFFOLK.

11. At all times hereinafter mentioned, Defendant, CPS SUPERVISOR/BUREAU CHIEF TRACI BARNES, was a senior caseworker/Supervisor and Bureau Chief at Child Protective Services Investigations Bureau, 3455 Veterans Memorial Highway, Ronkonkoma, New York, and was acting in the course of his employment with defendant THE COUNTY OF SUFFOLK, and in furtherance of the business of the defendant THE COUNTY OF SUFFOLK.

12. At all times hereinafter mentioned, Defendant, SUFFOLK COUNTY DETECTIVE BARRIOS SPECIAL VICTIMS UNIT, 3455 Veterans Memorial Highway, Ronkonkoma, New York.

13. At all times hereinafter mentioned Defendant, NASSAU COUNTY is a municipal corporation with a principal place of business at 1550 Franklin Avenue Mineola, New York. (hereinafter referred to as “The County of Nassau”, “Nassau County”)

14. At all times hereinafter mentioned, Defendant, NANCY NUNZIATA

COMMISSIONER, was a senior caseworker/Supervisor and Bureau Chief, Commissioner at Administration of Child Protective Services and was acting in the course of her employment with defendant THE COUNTY OF NASSAU, and in furtherance of the business of the defendant THE COUNTY OF NASSAU.

15. At all times hereinafter mentioned, Defendant, MARY NEALY SUPERVISOR NASSAU COUNTY ATTORNEY'S OFFICE, a Supervisor and at the Nassau County Attorneys' Office and was acting in the course of her employment with defendant THE COUNTY OF NASSAU, and in furtherance of the business of the defendant THE COUNTY OF NASSAU.

16. At all times hereinafter mentioned, Defendant, TRACY AULL CPS AGENT, is a senior caseworker at Administration of Child Protective Services and was acting in the course of her employment with defendant THE COUNTY OF NASSAU, and in furtherance of the business of the defendant THE COUNTY OF NASSAU.

**JURISDICTION AND VENUE**

17. The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

18. This Court also has supplemental jurisdiction over claims asserted against Defendants under New York State law pursuant to 28 U.S.C. § 1367.

19. Plaintiff's Notice of Claim against Suffolk County (the "County") was filed with the County of Suffolk on June 5, 2023.

20. The County of Suffolk requested that JENNETTE LOTREAN participate in a N.Y. Gen. Mun. Law 50-h hearing, and same was conducted and completed on September 8, 2023.

21. The County of Suffolk waived its right to take HB's 50-h exam.

22. Plaintiff's Notice of Claim against Nassau County was filed with the County of Nassau on June 5, 2023.

23. The County of Suffolk requested that JENNETTE LOTREAN participate in a N.Y. Gen. Mun. Law 50-h hearing, and same was conducted and completed on May 23, 2023.

24. The County of Nassau waived its right to take HB's 50-h exam of the Plaintiffs than thirty days have elapsed since the presentation of said Notice of Claims, and that the said claims have remained unadjusted and the said respondents have failed and/or refused to make any adjustment thereof. A hearing pursuant to Municipal Law §50-H will be held at mutually convenient time and place, subject to a request made by the Defendants.

25. Venue lies in the District of New York under 28 U.S.C. § 1391(b)(2) because the relevant events occurred in Suffolk and Nassau County.

**STATEMENT OF FACTS**

26. At all relevant times hereto, Dwight Bruno is alleged to be the biological father of HB.

27. At all relevant times hereto, Dwight Bruno resided at 1 Pine Acre Ct., Dix Hills, New York 11746 (sometimes referred to as "house").

28. At all relevant times prior to Family Court Orders commencing on or before, October 31, 2022, HB had visits with Dwight Bruno at Dwight Bruno's house.

29. At all relevant times hereto, Dwight Bruno resided with Rebecca Castillo-Heller a/k/a Rebecca Heller at the house.

30. On April 1, 2022, Jennette caught HB in her bedroom, in front of the floor length mirror, naked and dancing (twerking), which was also very out of character for him. Jennette asked why he was doing that, and the child indicated that they danced naked at Daddy's house.

31. The child reported that the Respondent, a boy, and the boy's mother were doing this. The child also said there was a physical fight between Dwight Bruno and some other younger male figure, who was later learned to be Brandon Castillo).

32. The child was humping his pillow to show Jennette what the dancing looked like.

33. April 1, 2022, Jennette drove to her local police precinct in Babylon (Suffolk County Police Department-First Precinct), to report her son's initial concerning disclosures, after being re-directed, She then drove to the 2nd Precinct and reported the incidents there.

34. At that time, Jennette had no idea who was a part of Dwight's household. No new case, investigation, file, or report was made by the Respondents, in response to this claim/report.

35. April 4, 2022, HB gave further disclosure to Jennette of touching and sexual abuse that had occurred at Bruno's home.

36. HB described that Dwight removed his pants and removed the pants of Rebecca Castillo-Heller a/k/a Rebecca Hellers son Isiah, and he touched the genitals of both boys.

37. HB also described that an additional man was present who "copied" what Dwight was doing to him, on Isiah. Learning of this from HB, Jennette became physically disturbed by the description that caused her to shake and vomit.

38. She felt that she could not safely drive to the police station, so she called 911. Multiple police vehicles arrived and her lawn was filled with police officers. Jennette gave her statement to a police officer who informed that the man who did this would get arrested and pay for what he did.

39. The matter was then referred to Suffolk County SVU, Detective Barrios.

40. HB requested to speak with a female investigator and that request was denied. Detective Barrios and Suffolk County CPS Agent, Ida Santos, conducted the Forensic Interview of HB.

41. Both claimed that there was no disclosure and they proceeded to convince Jennette that although she believed something had happened, they did not believe it did. No new case, investigation, file, or report was made by the Respondents, in response to this claim/report.

42. On April 22, 2022: Dwight Bruno commenced a custody and visitation proceeding against. Jennette in Family Court of the State of New York, Suffolk County File No.: 180946, Docket No.: V-05561-22.

43. Docket No.: V-05561-22, listed June 7, 2022 as the virtual return date in the Parental Settlement Conference Part.

44. On or about June 12, 2022, after bathing the child, Jennette set him on his bed to get dressed. When Jennette checked on the child, his penis was hard, and he had one of his stuffed animals with its mouth on his penis rubbing it back and forth.

45. When Jennette asked the child what he was doing, he said “He’s eating my privacy.” When to him.” He then said his pee pee went “Woosh.” Jennette began to video her conversations with HB and was able to document his reports.

46. On or about June 14, 2022, the child said to Jennette that the Respondent “sparked his butt.” Jennette asked the child what this meant. The child said that Respondent put his pee pee on the child’s butt. The child showed Jennette where, pointing to his butt cheek. And said here, not where I go poo poo.

47. Between June 12 and June 14 2022, Plaintiff called Barrios more than 14 times and left numerous voicemails and messages with the front desk to SVU and with his supervisor.

48. Jennette informed that she had video recordings of HB's reports of being sexually abused. The Defendants did not return Plaintiff's pleas for help.

49. Plaintiff then made a second report to the SCR with CPS. New CPS agent Ashley was assigned to the case and contacted Plaintiff, due to illness and travel schedules an appointment to interview HB was scheduled for July 13, 2022.

50. In July 2022, HB made further disclosures of sex abuse to Jennette. After HB was bathed and while naked, HB placed a doll's mouth on his hard penis. When questioned, as to what he was doing, HB said, "He's eating my privacy." (Which is language used by Jennette and HB to refer to as their genitals).

51. When asked why he would be doing that? HB responded "because my dad did it to me."

52. Later that day HB grabbed the families large dog from behind and thrust his genitals and pelvis into the dog's behind. When asked what he was doing, HB said he was putting his "pee pee in Rocco's butt."

53. When questioned as to why he was doing that, HB responded because his dad did it to the other little boy. (referring to a 5 year old who lives in DB's and Rebecca Castillo-Heller a/k/a Rebecca Heller's household). Plaintiff contacted Suffolk CPS again.

54. On July 13, 2022, the new agent Ashley met with the Plaintiffs, at which time they were informed by Ashley that Barrios refused to be a part of the interview because he had already closed the case.

55. Ashley hosted the CAC interview with HB behind closed doors. In the debrief, Ashley tried to convince Jennette that the above accounts were "normal exploration & child's play." Ashley began questioning Jennette as to any sexual abuse she may have faced and suggested

that Jennette perceived sex abuse where it did not exist. Jennette's response was that HB had specific knowledge about adult sexual acts, and that is his reporting is not something that can be perceived through an altered perception of reality. Ashley closed the case as unfounded.

56. On July 19, 2023 at 10:36 am, Jennette texted CPS Agent Ashley providing additional information about another young boy that HB had reported was sexually abused at the same time that HB was abused while both were in the care and custody of DB.

57. Ashley from CPS never responded to the text. No new case, investigation, file, or report was made by the Respondents, in response to this claim/report.

58. CPS Case Worker Ashley was directed, influenced, coerced, and otherwise influenced by her seniors, and higher-ups at the County of Suffolk to make no findings, or harmful reports, recommendations, or further investigations that would result in Dwight Bruno or Rebecca Castillo-Heller a/k/a Rebecca Heller, being culpable, impuned, or aiding or abetting sexual assaults and abuse against HB. CPS Case Worker Ashley, was reckless, negligent, and failed to fully perform her duties.

59. On August 10, 2022, The Family Court directed CPS to prepare a 1034 FCA Report.

60. November 16, 2022, On September 8, 2022 Senior Case Worker Leslie Krieger, filed with the Family Court its § 1034 FCSA Report.

61. The FCSA Report contained misrepresentations of fact, omission of relevant and material facts.

62. The FCSA Report noted that:

"Ms. Lotrean expressed concern regarding Mr. Bruno's behavior with their young son, HB, and as a result she doesn't feel safe for HB to have visits with his father. Ms. Lotrean confirmed that HB hasn't seen his father since in or around the end of March 2022. She said HB doesn't want to have visits with his father. Ms. Lotrean stated HB

returned home from a visit with his father and reportedly dropped his pants and said, "I got a big weanie." Another time, Ms. Lotrean observed HB "twerking" naked in the mirror. Ms. Lotrean said under her supervision, HB has no access to sites where he would see that behavior. She observed HB naked on his bed with a doll placed in his crotch. Ms. Lotrean asked him what he was doing. HB replied, "She's eating my privacy." According to Ms. Lotrean, HB told her that "Daddy did it to me." Ms. Lotrean also reported that when she asked HB to tell the truth to the police officer, he replied, “I don’t want the police to hurt Daddy."

63. The Defendants1034 Investigation was closed, no SCR Report was generated- and that was the end of their investigation. The no finding was based, in part, upon an interview with HB where he did not report being sexually abused, and upon the denial of any wrongdoing by Dwight Bruno or his ‘paramour Rebecca Castillo-Heller a/k/a Rebecca Heller.

64. At all relevant times Rebecca Castillo-Heller a/k/a Rebecca Heller’s oldest son (age 21) is a member of the household who is a witness to the abuse and CPS refused to interview him.

65. HB reported to Jennette that he witnessed the 21 year old physically fight his dad, Dwight Bruno, and the boy told HB that he would fight him everyday for what he did to him.

66. In order to avoid interviewing the 21 year old, Suffolk CPS writes in the 1034 report that the 21 year old lives in a separate basement apartment. This was refuted in open court testimony that described the home as a single family house with two bedrooms and a bathroom downstairs, with no separate apartment.

67. The 1034 FCA Report noted “No indicated cases” of History of indicated Child Protective Services cases. The 1034 FCA Report did not mention that Suffolk County SVU, Detective Barrios had been assigned to investigate the case, that Suffolk County CPS Agent, Ida Santos, conducted a Forensic Interview of HB, that Ashley of CPS had conducted a CAC Interview with HB, that 911 had been called to the home, Jennette had filed a Domestic Incident Report with the SCPD on April 1, 2022.

68. Yet, Domestic Incident Reports of Rebecca Castillo-Heller a/k/a Rebecca Heller were located dating back to October 2011.

69. Senior Case Worker Leslie Krieger was directed, influenced, coerced, and otherwise influenced by her seniors, and higher-ups at the County of Suffolk to make no findings, or harmful reports, recommendations, or further investigations that would result in Dwight Bruno or Rebecca Castillo-Heller a/k/a Rebecca Heller, being culpable, impuned, or aiding or abetting sexual assaults and abuse against HB. Senior Case Worker Leslie Krieger, was reckless, negligent, and failed to fully perform her duties.

70. In September 2022, Jennette procured HB's psychological services as the result of HB being sexually abused by his father Dwight Bruno.

71. Based upon CPS Report, on September 12, 2022, the Family Court ordered that Dwight Bruno be entitled to "supervised parental visitation" of HB, every Saturday from 1 pm to 4 pm at a public place."

72. The September 12, 2022 Order did not specify who was to "supervise" the visit, but The Court verbally stated on the record that Rebecca Heller would be the designated supervisor.

73. After court, on September 12, 2022, Jennette immediately called CPS and spoke to Leslie, and asked how this is possible that the judge would order Rebecca as the supervisor when she is a biased member of the household and was present in the home during past abuse incidents, to be the supervisor.

74. Leslie responded, because "Rebecca is professional and trustworthy." At this point, Jennette asked Leslie to view the recordings Jennette had of HB and she said she couldn't because she had already closed the case.

75. CPS and Leslie had no reason to know whether Rebecca Heller was “professional” or “trustworthy” and CPS and Leslie had a conflict of interest which led Leslie to “vouch” for Rebecca Heller, without any basis or cause to do so.

76. On September 17, 2022, HB was in the sole custody of Dwight Bruno, at their court ordered supervised visit. Dwight Bruno’s paramour Rebecca Castillo-Heller a/k/a Rebecca Heller was “supervising” the visit.

77. During this visit, HB was taken to a beach.

78. When HB was returned to Jennette she noticed that his pants were loosened and he had been changed into a bathing suit.

79. It was later reported that Dwight Bruno had stripped HB naked and changed HB into and out of a bathing suit.

80. On September 22, 2022 Jennette presented an emergency order to show cause to the family court seeking a modification of the Temporary Order of Visitation dated September 12, 2022, to require visitation of Dwight Bruno with HB under the direction and assistance of Long Island Visitation and Family Services or other Court-Approved agency.

81. On September 23, 2022, Jennette called CPS when she learned from HB that Dwight had broken the court order, by being alone with HB, and by stripping HB naked on the court ordered visit of Sept 17th.

82. Jennette contacted CPS to get an agent to view the new evidence/recordings of HB’s disclosures since Leslie claimed she couldn't because she already closed the case.

83. No new case, investigation, file, or report was made by the Respondents.

84. Jennette called the SCR and made an additional report and she was persistent with the SVU Supervisor to get another interview for HB and to show them the video evidence.

85. On September 23, 2022, CPS Agent Ida Santos called Jennette and chastised her for making the report and requested that Jennette withdraw the complaint.

86. Shortly after the September 23, 2022 phone call, Ida Santos appeared at Jennette's house, at which time HB indicated that he wanted to talk to her. Ida Santos, informed Jennette that she's not the agent on the case and she can't take his statement. No new case, investigation, file, or report was made by the Respondents.

87. In or about, September, 2022, Suffolk County CPS recused itself from the case claiming there was a conflict of interest and the case was reassigned to Nassau County Department of Social Services.

88. In or about, September, 2022, the individual Defendants in their capacities as CPS and SCPD officials and/or employees of the COUNTY OF SUFFOLK, all under the supervision of ranking officers, Commissioners and Supervisors of said departments with all the actual and/or apparent authority attendant thereto, directed, influenced, coerced, threatened the Nassau County Defendants to: make no findings, or harmful reports, records, notations, entries, memorialization, recommendations, or further investigations that would result in Dwight Bruno or Rebecca Castillo-Heller a/k/a Rebecca Heller, being culpable, impuned, or aiding or abetting sexual assaults and abuse against HB; make findings, or harmful reports, records, notations, entries, memorialization, recommendations, against Jennette as a means to stop her from reporting abuse of HB.

89. On September 23, 2022 Nassau County Department of Social Services is Ordered by The Suffolk County Family Court to perform an investigation and report pursuant to FCA 1034(1)(b), in reference to the allegations or issues of sexual abuse.

90. On September 27, 2022, Suffolk County Police Department SVU conducted an interview of HB. Detective Barrios and a blonde female investigator conducted the interview of HB, and CPS failed to attend or appear for the interview.

91. After the interview with HB, Detective Barrios agreed to watch a 6 min recording of HB speaking freely and unsolicited in detail about the abuse he suffered. Barrios stated that that "CPS needs to see this."

92. At this time Jennette informed Barrios that no one was actually investigating the case or taking the allegations seriously.

93. Detective Barrios then informed Jennette that Suffolk County CPS had a conflict of interest which accounted for CPS' mishandling of the case.

94. Barrios further informed that "[he] arrests the bad guys. I don't get involved in Family Court drama. We work hand in hand with CPS. Your lawyer gets paid the big bucks. Have her handle it."

95. No new case, investigation, file, or report was made by the Respondents. Jennette reported that there is a 21 year old who lives in the household who is a witness to the abuse and CPS refuses to interview him.

96. Detective Barrios promises that he would interview the 21 year old the following day.

97. Nassau County/Suffolk County Respondents, directed, influenced, coerced, and otherwise through influenced by his seniors, and higher-ups at the County of Suffolk performed no further investigation, did not interview, arrest, or take any action that would result in Dwight Bruno or Rebecca Castillo-Heller a/k/a Rebecca Heller, being culpable, prosecuted for sexual assault and/or aiding and abetting sex abuse/assault against HB. Detective Barrios, was reckless,

negligent, and failed to fully perform his duties. No new case, investigation, file, or report was made by the Respondents.

98. On September 28, 2022 Nassau County Child Protective Services, Case Worker Tracy Aull interviewed Suffolk County Detective Berrios.

99. Jennette's attorney Danielle Murray called Berrios, at which time he said, "If your client calls me again, I will be pressing charges."

100. On September 29, 2022, HB's therapist, a mandatory reporter, called Child Protective Services and reported HB's sex abuse and spoke with Rep Heidi Call ID #: 34313670.

101. Nassau County/Suffolk County Respondents, Heidi, was directed, influenced, coerced, and otherwise influenced by her seniors, and higher-ups at the County of Suffolk to make no findings, or harmful reports, records, notations, entries, memorialization, recommendations, or further investigations that would result in Dwight Bruno or Rebecca Castillo-Heller a/k/a Rebecca Heller, being culpable, impuned, or aiding or abetting sexual assaults and abuse against HB. Rep Heidi Call ID #: 34313670, was reckless, negligent, and failed to fully perform her duties. No new case, investigation, file, or report was made by the Respondents, in response to this claim/report. County/Suffolk County Defendants in formed the therapists that no investigation would be conducted because a previous claim were determined to be "unfounded."

102. On September 30, 2022, Nassau County Department of Social Tracy Aull introduced herself to Jennette and advised that Nassau County will be conducting the investigation of child sex abuse allegations.

103. On September 30, 2022, Tracy Aull then met with HB.

104. On September 30, 2022, Plaintiff asked Aull to review the videos of HB where he disclosed the abuse.

105. Aull refused to review the videos because attorneys had advised her not to watch video, when pressed by Plaintiff, Aull advised that she was conducting an investigation.

106. On September 30, 2022, The Court Ordered Supervised Visitation by the "Suffolk Supervised Visitation Program or LI Visitation, under dockets numbered: V-05561-22 & V-13358-22.

107. But for the Defendants Suffolk County, being directed, influenced, coerced, and otherwise influenced by superiors to make no findings, or harmful reports, records, notations, entries, memorialization, recommendations, or further investigations that would be in the Court Record, as the result of allegations that Dwight Bruno and/or Rebecca Castillo-Heller a/k/a Rebecca Heller, were culpable, impuned, or were aiding and abetting sexual assaults and abuse against HB, the Court file would have contained information that would have persuaded The Court to not Order Supervised Visitation of Dwight Bruno with HB. Suffolk County Defendants were reckless, negligent, grossly negligent in carrying out their duties to wit no records were before The Court as to the allegations of sex assault and abuse.

108. On October 5, 2022, HB's therapist, a mandatory reporter, called Child Protective Services and spoke with caseworker Aull's supervisor, Mary Nealy, further reporting \HB's sex abuse, that she had seen video of HB touching his privates and stating that dad did this to him.

109. On October 12th, 2022, HB's therapist made another contact to CPS, reporting to Ms. Aull's supervisor, Mary Nealy, that prior to leaving the therapy office, HB's therapist witnessed HB inappropriately touching his mother (Plaintiff) between her legs and her breasts. When the Plaintiff asked HB why he was doing that, HB responded by whispering in her ear "because that is what Daddy did to me." The Therapist overheard HB's statement which precipitated the contact to CPS.

110. On October 19th, 2022, HB's therapist made another contact to CPS, reporting to Ms. Aull the caseworker in charge of Hunter's case, that during their session that morning, HB disclosed inappropriate touching by his father on his privates.

111. On or about October 17, 2022, Jennette reached out to the Nassau CPS supervisor, Ms. Nealy, to discuss Nassau County's handling of the case. During the conversation Ms. Nealy informed that she was not aware that Nassau County had been assigned the HB matter due to Suffolk County respondents' recusal based on a conflict of interest.

112. Nassau CPS supervisor, Ms. Nealy, was simply told the move to a neighboring county was an administrative decision and they perform wellness checks during home visits. Jennette asked that Nassau County continue the investigation of HB's allegations (and video evidence) that HB had been sexually abused by his father, as the Family Court Actions were still pending.

113. Nassau CPS supervisor, Ms. Nealy, refused, stating that Suffolk County had already investigated and that's why Nassau County did not have to. No new case, investigation, file, or report was made by the Respondents, in response to this claim/report.

114. Jennette persisted arguing that Suffolk County's investigation was tainted because of the conflict of interest and that is why Nassau County should perform a complete investigation.

115. Nassau CPS supervisor, Ms. Nealy directed Jennette that if her son HB discloses any additional abuse, that Jennette is not to call CPS, but that she is only to speak to HB's therapist.

116. Ms. Nealy, Nassau County Child Protective Services and Nassau County Respondents, were directed, influenced, coerced, and otherwise influenced by Suffolk County and/or Nassau County Defendants to make no findings, or harmful reports, records, notations, entries, memorialization, recommendations, or further investigations that would result in Dwight

Bruno or Rebecca Castillo-Heller a/k/a Rebecca Heller, being culpable, impuned, or aiding or abetting sexual assaults and abuse against HB. Ms. Nealy, Nassau County Child Protective Services were reckless, negligent, grossly negligent in their failure to fully perform their duties.

117. On October 31, 2022, during the Family Court proceedings HB's attorney presented HB's therapists' concerns and statements that HB had disclosed to them in therapeutic sessions that HB was being sexually abused at the hands of his father.

118. On October 31, 2022, as the result of HB's and Jennette's attorneys insistence, the Family Court issued an Order, immediately suspending Dwight Bruno's, visitation with HB, under dockets V-05561-22 & V-13358-22.

119. On November 16, 2022, Aull met with Plaintiff for the second time at which time Plaintiff requested that Aul interview HB for a second time, at which time Aull advised that she would not be re-interviewing HB.

120. During the November 16, 2022 visit, Plaintiff requested that Aull perform a thorough investigation because the courts were relying upon her report.

121. The Court further directed that the therapists communicate directly with the Court since CPS was neglecting to relay their information to the Court through 1034 reports.

122. After the court hearing opposing counsel for Dwight Bruno sent an email to Jennette's lawyer, HB's lawyer, and the Family Court Judge, confirming that Suffolk County had a conflict of interest and could no longer be the agency in charge of the HB matter.

123. Opposing counsel stated that Rebecca Heller is an active church member with The Head of Suffolk County CPS, which was the basis of the conflict and the recusal.

124. In light of this ‘discovered’ evidence, the Judge requested another 1034 report based on the therapist's letter, and was assuming that CPS would now "handle things differently" while being confronted with evidence of their negligence.

125. Nassau County CPS prepared and filed its 1034 Report with the court on November 17, 2022, which was signed by Caseworker Tracy Aull, Mary Nealy Supervisor.

126. The 1034 Report did not reference or include the prior reports made directly to Aull and Neally by HB’s therapists.

127. The Judge stated that perhaps they will move the case to ACS (the CPS of the boroughs). That is not what CPS did. They assigned the case back to Nassau CPS.

128. On January 12, 2023, Tracy Aull telephoned Jennette to inform that she was re-assigned the case. Jennette was shocked that they had reassigned Aull to the case given that evidence of the therapist's letter, confirmed that Aull had purposely failed to include this vital information in her 1034 report to the Court.

129. This time Nassau County CPS requested to perform a forensic evaluation of HB in the Safe Center in Nassau County.

130. Since Nassau County threatened Jennette and their independent professional judgment compromised, Jennette concluded that Nassau County could not be trusted to act in her son's best interest.

131. Nassau County Defendants were acting to protect the interests of their Suffolk County counter-parts, and covered up the malfeasance of their Suffolk County counter-parts, to the prejudice and physical and emotional harm of HB and Jennette.

132. On January 22, 2023, Jennette received notification from Nassau County CPS, that on January 11, 2023 Nassau County CPS, opened an investigation against her for Child Abuse and Maltreatment.

133. Ms. Nealy, Nassau County Child Protective Services and Nassau County Respondents, directed, influenced, coerced, and otherwise influenced Tracy Aull and/or Mary Nealy, Nassau County Defendants to make false, unfounded, baseless allegations and/or to provide support to further allegations and public filing of the report alleging Jennette was culpable, impuned, or aided or abetted sexual assaults and abuse, and/or neglect of and against HB. Ms. Nealy, Tracy Aull, Nassau County Child Protective Services, Nassau County Defendants retaliated against Jennette by their preparation, submission, of a report to the New York Statewide Central Register of Child Abuse and Maltreatment against Jennette, and used their power to make said claims and reports in an effort to silence and subdue her reporting to said defendants.

134. Ms. Nealy, Tracy Aull, Nassau County Child Protective Services, Nassau County Defendants were reckless, negligent, grossly negligent in the investigation, preparation, submission, of a report to the New York Statewide Central Register of Child Abuse and Maltreatment against Jennette

135. On January 22, 2023, Tracy Aull and/or Mary Nealy, Nassau County Defendants refused to inform Jennette of what the allegations were against her in violation of law, rules, regulations, and procedures. Despite their frequent communications with Jennette after the investigation was opened Tracy Aull and Mary Nealy and Nassau County Defendants never disclosed the facts, specifics, basis or nature of the allegations that they were in investigation against Jennette.

136. On March 7, 2023, the Family Court proceedings were settled and the cases closed, Dwight Bruno's Acknowledgement of Paternity of HB, was vacated.

137. On March 23, 2023, New York State Office of Children and Family Services corresponded to Jennette informing that the report to the New York Statewide Central Register of Child Abuse and Maltreatment against her was "unfounded.

**AS AND FOR A FIRST CAUSE OF ACTION**
***Conspiracy To Violate Plaintiffs' Civil Rights***

138. Plaintiffs repeat and reallege the factual allegations contained in paragraphs numbered "1" through "137" as if more fully set forth herein.

139. The individual Defendants in their capacities as CPS and SCPD/ NCPD officials and/or employees of the COUNTY OF SUFFOLK, and the COUNTY OF NASSAU all under the supervision of ranking officers, Commissioners and Supervisors of said departments with all the actual and/or apparent authority attendant thereto, conspired and acted in concert to do whatever was necessary, lawful or not, by directing, influencing, coercing, threatening, the individual Defendants in their capacities as CPS and SCPD/ NCPD officials and/or employees of the COUNTY OF SUFFOLK and the COUNTY OF NASSAU, to refuse and fail to: perform their duties; conduct proper forensic evaluation of HB; conduct meaningful investigation; conduct thorough and complete interviews; arrest or take any action that would result in Dwight Bruno or Rebecca Castillo-Heller a/k/a Rebecca Heller from being culpable or prosecuted for sexual assault and/or aiding and abetting sex abuse/assault against HB.

140. The conspiracy deprived Jennette of her lawful custodial rights over HB, and HB's rights to be protected from sex assault and abuse by the one seeking custody and visitation over him. Throughout the period of the conspiracy, government Defendants pursued their objectives

with actual malice toward Jennette with utter and deliberate indifference to and disregard for her rights under the Constitution and laws of the United States, to protect the interest of the accused, and victims and the interests of the government Defendants and their friends and colleagues.

141. Pursuant to the conspiracy, the conspirators, and their employees, agents and servants, intentionally, recklessly, negligently, and/or with complete indifference to the rights of Jennette and HB: (a) manufactured false evidence, gave untruthful, erroneous, incomplete and/or misleading statements and/or testimony, failed to document, follow up on, investigate, open a new files, refer the matter to law enforcement and other agencies, ignored the mandatory reports submitted by HB's therapists, and refused to review evidence; (b) pressured, intimidated, threatened, and coerced Jennette to make no further reports or inquiries; (c) pressured, intimidated, threatened, and coerced the individual Defendants in their official capacities to make no further investigations, reports or inquiries; (d) failed to correct such false statements and testimony, reports, and findings; (e) withheld from the courts and/or the Suffolk County Department of Social Services, evidence favorable to Jennette and HB; (f) withheld from the courts and/or the individual Defendants in their capacities as COUNTY OF NASSAU officials and/or employees of the COUNTY OF NASSAU, all under the supervision of ranking officers, Commissioners and Supervisors of said departments with all the actual and/or apparent authority attendant thereto, evidence that would be harmful to Dwight Bruno and Rebecca Castillo-Heller a/k/a Rebecca Heller, as being culpable or prosecuted for sexual assault and/or aiding and abetting sex abuse/assault against HB.

**<u>AS AND FOR A SECOND CAUSE OF ACTION</u>**
***(Fabrication Of Evidence/Denial Of The Right To A Fair Trial)***

142. Plaintiffs repeat and reallege the factual allegations contained in paragraphs numbered "1" through "141" as if more fully set forth herein.

143. The individual Defendants in their capacities as COUNTY OF NASSAU officials and/or employees of the COUNTY OF NASSAU, all under the supervision of ranking officers, Commissioners and Supervisors of said departments with all the actual and/or apparent authority attendant thereto, misrepresented and falsified evidence about Jennette and HB, hid the truth about HB's abuse, misleading and dishonest reports about Jennette and HB, presented this false evidence to Suffolk County Family Court Judges, and attorneys throughout the Civil Proceedings.

144. As a result of the aforesaid unlawful actions by the Respondents, Jennette's child HB was placed in the custody and control of Dwight Bruno and Rebecca Castillo-Heller a/k/a Rebecca Heller in the form of supervised visitation.

145. Jennette, was subjected to an utterly baseless and unlawful investigation, was threatened to make no further reports of abuse of HB, was threatened to withdraw complaints and reports.

146. Further, as a result of Respondents' unlawful actions, Jennette was deprived of the lawful custody and visitation of HB, during Dwight Bruno and Rebecca Castillo-Heller a/k/a Rebecca Heller's court ordered visitation.

147. The individual Defendants in their capacities as COUNTY OF NASSAU officials and/or employees of the COUNTY OF NASSAU, all under the supervision of ranking officers, Commissioners and Supervisors of said departments with all the actual and/or apparent authority attendant thereto, gave false and misleading reports, and testimony throughout the Civil Proceeding, thereby violating Jennette's and HB's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

148. As a result of the foregoing, Defendants violated the Plaintiffs' federal rights, privileges and/or immunities as secured by the Constitution and laws of the United States of America.

**AS AND FOR A THIRD CAUSE OF ACTION**
***(Fabrication Of Evidence/Denial Of The Right To A Fair Trial)***

149. Plaintiffs repeat and reallege the factual allegations contained in paragraphs numbered "1" through "148" as if more fully set forth herein.

150. The individual Defendants in their capacities as CPS and SCPD officials and/or employees of the COUNTY OF SUFFOLK, all under the supervision of ranking officers, Commissioners and Supervisors of said departments with all the actual and/or apparent authority attendant thereto, misrepresented and falsified evidence about Jennette and HB, hid the truth about HB's abuse, misleading and dishonest reports about Jennette and HB, presented this false evidence to Suffolk County Family Court Judges, and attorneys throughout the Civil Proceedings. As a result of the aforesaid unlawful actions by the Respondents, Jennette's child HB was placed in the custody and control of Dwight Bruno and Rebecca Castillo-Heller a/k/a Rebecca Heller in the form of supervised visitation. Jennette, was subjected to an utterly baseless and unlawful investigation, was threatened to make no further reports of abuse of HB, was threatened to withdraw complaints and reports. Further, as a result of Respondents' unlawful actions, Jennette was deprived of the lawful custody and visitation of HB, during Dwight Bruno and Rebecca Castillo-Heller a/k/a Rebecca Heller's court ordered visitation.

151. The individual Defendants in their capacities as CPS and SCPD officials and/or employees of the COUNTY OF SUFFOLK, all under the supervision of ranking officers, Commissioners and Supervisors of said departments with all the actual and/or apparent authority attendant thereto, gave false and misleading reports, and testimony throughout the Civil

Proceeding, thereby violating Jennette's and HB's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution. As a result of the foregoing, Defendants violated Plaintiffs' federal rights, privileges and/or immunities as secured by the Constitution and laws of the United States of America.

## AS AND FOR A FOURTH CAUSE OF ACTION
***(Malicious Abuse Of Process)***

152. Plaintiffs repeat and reallege the factual allegations contained in paragraphs numbered "1" through "151" as if more fully set forth herein.

153. The individual Defendants undertook these actions in order to obtain a collateral objective outside the legitimate ends of the legal process.

154. Specifically, Defendants acted in this manner in order to shield, protect, invalidate, refute, any action or allegation, process, or proceeding, that would result in Dwight Bruno or Rebecca Castillo-Heller a/k/a Rebecca Heller from being, found, held, determined, investigated, or prosecuted for the sexual assault and/or aiding and abetting sex abuse/assault of HB.

155. In addition, pursuant to the conspiracy, the conspirators, and their employees, agents and servants, intentionally, recklessly, negligently, and/or with complete indifference to the rights of Jennette and HB: (a) manufactured false evidence, gave untruthful, erroneous, incomplete and/or misleading statements and/or testimony, failed to document, follow up on, investigate, open a new files, refer the matter to law enforcement and other agencies, ignored the mandatory reports submitted by HB's therapists, and refused to review evidence; (b) pressured, intimidated, threatened, and coerced Jennette to make no further reports or inquiries; (c) pressured, intimidated, threatened, and coerced the individual Defendants in their capacities as CPS and SCPD officials and/or employees of the COUNTY OF SUFFOLK, and of NASSAU COUNTY all under the supervision of ranking officers, Commissioners and Supervisors of said departments with all the

actual and/or apparent authority attendant thereto, to make no further investigations, reports or inquiries; (d) failed to correct such false statements and testimony, reports, and findings; (e) withheld from the courts and/or the Suffolk County Department of Social Services, evidence favorable to Jennette and HB; (f) withheld from the courts and/or the Suffolk County Department of Social Services and SCPD, evidence that would be harmful to Dwight Bruno and Rebecca Castillo-Heller a/k/a Rebecca Heller, as being culpable or prosecuted for sexual assault and/or aiding and abetting sex abuse/assault against HB.

**AS AND FOR A FIFTH CAUSE OF ACTION**
***(Right to Petition)***

156. Plaintiffs repeat and reallege the factual allegations contained in paragraphs numbered "1" through “155” as if more fully set forth herein.

157. The individual Defendants undertook these punitive and threatening measures against Plaintiffs to dissuade, discourage and stifle Plaintiffs from making further complaints and/or reports about HB’s abuse.

158. The individual Defendants undertook these punitive and threatening measures against Plaintiffs in order to shield, protect, invalidate, refute, any action or allegation, process, or proceeding, that would result in Dwight Bruno or Rebecca Castillo-Heller a/k/a Rebecca Heller from being, found, held, determined, investigated, or prosecuted for the sexual assault and/or aiding and abetting sex abuse/assault of HB.

159. The individual Defendants undertook these punitive and threatening measures against Plaintiffs to retaliate against the Plaintiffs for making further complaints and/or reports about HB’s abuse.

**AS AND FOR A SIXTH CAUSE OF ACTION**
***(Negligent Retention Hiring)***

160. Plaintiffs repeat and reallege the factual allegations contained in paragraphs numbered "1" through “139” as if more fully set forth herein.

161. Defendant COUNTY OF SUFFOLK owed a duty to the public at large, including but not limited to Plaintiff herein, to exercise reasonable care in the selection, hiring and retention of all of its employees, and in particular, those employees with the job responsibility of dealing with the public at large, and those who serve as Commissioners and/or heads of government agencies.

162. Defendant THE COUNTY OF SUFFOLK failed to use reasonable care when it hired SUFFOLK COUNTY SOCIAL SERVICES COMMISSIONER FRANCES PIERRE.

163. Defendant THE COUNTY OF SUFFOLK failed to use reasonable care when it continued to hire, employ, entrust, and empower SUFFOLK COUNTY SOCIAL SERVICES COMMISSIONER FRANCES PIERRE.

164. Defendant THE COUNTY OF SUFFOLK failed to make reasonable inquiries into the background, biases, and complaints against SUFFOLK COUNTY SOCIAL SERVICES COMMISSIONER FRANCES PIERRE, and failed oversee the carrying out of her official duties with respect to how to: (i) timely, properly recuse herself/ her agency due to conflicts of interest; ii) to not bully, coerce, direct, interfere with employees and agents under her command from carrying out their duties; iii) to not bully, coerce, direct, interfere with employees and agents under her command from falsifying and otherwise preparing and/or filing false and/or inaccurate reports and/or court filings; iv) to not bully, coerce, direct, interfere with employees and agents under her command from failing to respond to reports of mandatory reporters from preparing and/or filing reports and/or court filings.

165. Defendant THE COUNTY OF SUFFOLK breached the duty of cared that it owed to Plaintiffs.

166. As a direct and proximate result of defendant THE COUNTY OF SUFFOLK's negligence, Plaintiffs were deprived their rights.

167. As a direct and proximate result of defendant THE COUNTY OF SUFFOLK's negligence, HB was abused and was placed in the custody and control of those who did him harm.

168. That, the foregoing was due to the willfulness, unlawfulness, negligence and/or carelessness of the SUFFOLK COUNTY defendants, their agents, servants and/or employees in the operation, management, maintenance, supervision and control of SUFFOLK COUNTY SOCIAL SERVICES COMMISSIONER FRANCES PIERRE, and negligent hiring and/or retention of the aforesaid defendant COMMISSIONER without any culpable conduct on the part of the Plaintiff herein.

WHEREFORE , the Plaintiffs demand judgment over and against the Defendants as follows:

As and for their First, Second, Third, Fourth, Fifth and Sixth Causes of Action an amount to be determined at trial but not expected to be less than Five Million ($5,000,000) dollars for emotional and psychological distress and horror, anguish and anxiety. Damages are also claimed for punitive damages and attorneys' fees, due to the actions and/or negligence/ recklessness/ corruption and dereliction of duty of the Defendants as aforesaid.

Dated: New York, New York
October 8, 2024

The Law Offices of Peter Sverd, PLLC

By: */s/ Peter Sverd*
Peter Sverd, Esq.
*Attorneys for Plaintiffs*

225 Broadway, Suite 613
New York, NY 10007
(646) 751-8743
psverd@sverdlawfirm.com